Before you begin, I didn't even notice the names on the briefs. If I'm not mistaken, I married you many years ago, is that correct? Yes. I performed your marriage, that's right. There's a difference. Yes, that's true, that's true. But I just want to let you know that I haven't seen Mr. Steinbruner in a very long time. In a long time. Canons of judicial ethics don't make that an automatic recusal. No. May it please the court, I have 11 minutes and four minutes for rebuttal. My name is John Steinbruner, I'm representing the appellate in this matter. A brief history of the facts in this case, my client, who I represented in a Chapter 7 bankruptcy, filed it on November 18, 2011. And at that time she filed, she had a workers' compensation claim. She disclosed that claim on her schedules and exempted that under 11 U.S.C. 522 D-5, which is the wildcard exemption. She amended it as unknown as to the amount or the value of that claim. I was on notice that you had the claim. Right. Was there anything about that claim that permitted her from identifying the claim with more definiteness as to the amount? She had just recently lost her job. She had just filed this. She wasn't given an amount at that time because it would depend on how long she was disabled into the future. It would also depend on what medical might be there. So she didn't know what that claim was. She could have found those as benefits or as a one-lump settlement. So my question is, I understand how she would not have really had no idea about the value of the claim. And I am not an expert on bankruptcy law. But my understanding is that the exemption that she claimed would have had a maximum amount. Is that correct or not? That is correct, Your Honor. And at that time it was a little over $10,000, $10,500. So could she have claimed other exemptions at the time that would have exceeded whatever the exemption is that she wanted to amend? Could she have claimed it at the time? Yes, she could have. She could have claimed two other exemptions, 11 U.S.C. 522 D-10 and D-11. One provides for disability and the other was basically more of a personal injury or lost wages. So she could have done that at that time. It was an error not to do it at that time. And it wasn't brought to our attention until much later in the case, which occurred when it finally settled approximately a year and a half later. We learned about that it had settled from the trustee who contacted our on May 17, 2013 and advised this case settled and it's above the amount that you have exempted in this manner. Who settled the case? From my understanding it was the workers' compensation attorney who settled the case. But the trustee took over the claim, right, and was involved in the settlement. Is that correct? As far as I know, no, that's not correct. The trustee only monitored the claim. The trustee never was appointed, never appointed the workers' compensation or authorized him to handle the claim. He just contacted them and we weren't even aware of that. He sent a letter to the workers' compensation attorney saying please keep us involved in this and they monitored the claim every three months. They did not settle it and they never did that. Within eight days of learning that our exemption wouldn't satisfy the amount of this claim, which we had known at the beginning, we immediately amended our claim to claim the ones that would allow for this asset of the case to be exempt. And those were D10 and D11, as well as remaining any on D5. Rule 1009 allows a debtor to amend their schedules at any time while the case is open. And this case was open at that time. There were some exceptions to allowing amendments at the time that we did that under the Lucia's case. And that was a debtor could amend at any time unless there was concealment or bad faith. None of those issues existed at the time that we amended our case. One other, some other lower courts had also indicated that prejudice would be one of the reasons that would disallow an amendment. But this court had never made that ruling. Is prejudice defined as beyond a creditor getting a lower percentage distribution? Is prejudice to the creditor defined specifically under the law? Prejudice is defined as the creditor taking some steps that they are now precluded from taking based upon their reliance on whatever claims we had made. And I know this is probably a question for your, for the knowledge. The creditors weren't even aware that this claim was out there. They took no steps as far as we know because they weren't even notified that there were assets available to be distributed. So there was nothing that creditors could have taken or would have taken because they weren't even aware of the claim like we were. You're arguing that there is no prejudice to the settlement or anything like that? No, there's no indication of that. And the reason there's no indication of that is because the trustee wasn't the one who was trying to settle the case. It was just the workers' compensation attorney in the matter and my client who accepted the settlement. It wasn't that the trustee, the trustee consented to the settlement. The trustee didn't accept the settlement. It was that, and the attorney for the case couldn't have accepted that without my client saying, this seems worthwhile to me. I will take this at this point. It was my client, not the trustee. Okay, and then do you want to discuss, were you going to say something? I'm sorry. Oh, go ahead. I'll wait for you to finish. I'm not sure that last statement though is completely accurate though under the bankruptcy statute because in a Chapter 7, the trustee is statutorily responsible for the administering property of the estate and once that case is listed, it becomes property of that Section 541 bankruptcy estate. So I don't quarrel with what happened, but I think that the statement as Do you disagree that the claim belonged to the estate? No, it did not. All property belongs to the estate once the case is filed and it's carved out through various exemptions. Could I ask you this question just about the bankruptcy process? When the estate is enlarged, as the trustee seeks to do here, who profits from that? The creditors obviously would get a somewhat bigger distribution depending on how much it is obviously, right, if that's in the estate. Does the trustee also profit from enlarging the estate? Yes, the trustee's compensation is based on the amount that is recovered. There's certain percentages. Would have an interest and incentive to increase the size of the estate? Yes. For that reason as well. And what about the trustee's lawyer? They compensate generally and in some cases quite a bit because of the time involved in their hours and whatever processes they did in enlarging the estate. Is there some kind of tax that is realized by the judicial bankruptcy system itself based upon the size of the estate? I don't believe so in that case. I think it's funded solely from the filing fee and not from the property. The distribution would go to the creditors after the trustee and the Do you want to talk about the law case? Yes. I think that upended everything in this matter. It had been decided just at the point that we had filed this and the Supreme Court held that no matter whatever equitable powers remain with the Bankruptcy Court, they can only be exercised within the confines of the Bankruptcy Code. 11 U.S.C. 522 does not give discretion to grant or withhold exemptions based on whatever considerations they deem appropriate and the statute exhaustively specifies the criteria that will render property exempt. The trustee in the Siegel case argued that you could bar a debtor from amending his schedule to claim an exemption based on the debtor's fraudulent concealment of an asset. However, the Supreme Court said no, you cannot deny exemptions based on the statute. There was no claim of bad faith or misconduct on the part of either the trustee or the debtor, right? No, there was never any claim there. This claim seems to now hinge on prejudice according to the ruling by Judge Tarnow. Thank you. Thank you. Good afternoon. James Tocco appearing on behalf of the FLE Bankruptcy Trustee Kajen Lim. I want to just ask you a question at the outset. Tell me when one reads Bankruptcy Rule 1009A and reads the holding in law, how do you not lose? Your Honor, we're taking the position that if this case were before the Supreme Court, it wouldn't have been a nine to nothing against the trustee. It's pretty clear You just didn't have the right case. Well, our cases are not on all fours. The case of Law v. Siegel, the debtor in that case was terrible. He did, you know, pretending that there's a lien on property and filing a petition with statements of financial affairs that are incorrect. We have to read the Supreme Court opinion, and obviously the facts of this case are not the same as the facts of that case, never are the same. Correct. But the principles stated by the Supreme Court seem to be pretty clear. Well, the holding in the case is that the court doesn't have the authority under 105 of the Bankruptcy Code, which is the general powers of the court, that the Bankruptcy Court doesn't have the power to make a ruling that contravenes some other expressly written rule elsewhere in the Bankruptcy Code. So the holding in Law v. Siegel is that property of the debtor that's exempt cannot be used to pay the administrative expenses of the Chapter 7 trustee. So they can't take property away from the debtor to compensate the trustee in that case. Where in the Bankruptcy Code do you find justification for this ruling that any type of prejudice is sufficient and the bankruptcy judge has the leeway to set aside this, not allow this, on the grounds of some kind of hazy prejudice here? Well, Your Honor, it's the interplay between Rule 1009 and Rule 4003. The Rule 1009 pertains to an amendment of a schedule or a petition, and the rule basically says that the amendment is to be allowed at any time before the case is closed as a matter of course. Okay, so that's kind of the magic language there is, as a matter of course. This amendment is within that framework. Well, Your Honor, at the same time, Rule 1009 should operate in tandem. My question is, within what you just read, this amendment fits within that, right? Yeah, this case, I mean, that rule and this case are square, right? Because you don't contest that her amendments of the schedules came before the case was closed. Correct. Okay, so you're agreeing with that, right? Absolutely. That's my question. Correct, Your Honor. But you want to move on to the next section. You want to go to 4000? Right, because Rule 1009 does not operate in a vacuum. And the rule could have said it operates in a vacuum. The rule could have said at any time the debtor It applies to all amendments, though. Correct. But there has to be a point at which the debtor will no longer be permitted to file an amendment. Absolutely. If I, representing a trustee, were to sell somebody's home, some folks have two properties Yes, but that's not this case, and presumably there would be a remedy for that. Well, the remedy We don't have a case where it's all happened already, and everybody's got their money, and now we have to go back and recover the restitution, you know, have a restitution. That's not this case. That's not what it's about. No, Your Honor, that's not this case. What is this case is that the bankruptcy court is in the position to determine when an exemption should no longer be permitted. You say that 4003 is the overlay that saves you. I want to hear about that. Okay, so Rule 4003 says that when the debtor files an amendment, the trustee in any party and interest is given 30 days to file a response or objection. And that objection can relate to, you know, any criteria. Perhaps the exemption isn't, you know, they're claiming the D2 exemption, which is for a motor vehicle. They're claiming that on cars. Well, an objection doesn't mean that you win on that objection. That's what I want to hear, why that section saves you. And the simple filing of an objection can't be the thing that saves it. So tell me what it is about this that saves you. Your Honor, if the trustee were to administer property, if the debtor can amend, if we were to take Rule 1009 at its face and she can amend at any time, then the trustee could administer an asset, could write the checks, file the distribution, mail the checks to the creditors, the creditors can cash the checks. Counsel, that's not the case. Let's stick to the facts of our case. Right, but the court has to be in a position. It didn't happen here. The court has to be in a position to. It's a frivolous argument you're making that some other facts that could have happened. When they come, the courts will have to deal with that. But that's not what we've got. We've got a situation that's perfectly within the rules here. I think what you're arguing is against an absolute rule that says that an amendment can be made at any time under any circumstances. Is that what you're saying? Correct. We're absolutely fighting that. The bankruptcy court is empowered to make those determinations. Okay. There are many types of amendments. Is that correct? Sure. Okay. Not all of them would implicate a statutory mandatory exemption. Certainly. The debtor could amend their address on the petition. The debtor could perhaps add a creditor to Schedule F. So there are amendments that I don't think would necessarily impact the administration of the case, but something where the trustee who's got a statutory duty to jump in there. Are there amendments that would affect the administration of the case that would not involve an uncontroverted exemption, a clear exemption? I don't believe so, Your Honor. So any amendment that would affect the administration of the case is this type of amendment? From what I'm thinking at this point, I would say yes, because the trustee's job is to look at what the value of the assets are and what's been exempted and not exempted. So from the trustee's standpoint, the trustee has to get in there and liquidate the non-exempt property. So that's the most important thing as far as my client in this particular case. What about adding debts? I'm sorry? What about adding debts? Would that be an amendment? I'm asking you. I don't know. If they were to add a Schedule F, a general unsecured credit, to the case, that is certainly permitted. The creditor in that case does receive an opportunity to object to the debtor's discharge or certain of the deadlines that expired for everybody else earlier in the case, that creditor isn't subject to those. But there are provisions in the code where amendments come through that don't have this kind of impact. In this particular case, at the time that the petition was filed, the workers' compensation attorney had already made an offer to the debtor's employer, Taco Bell. He said, Give us $25,000 and we'll get out of here. So the offer for $25,000 was pending at the time that the case was an infant. But if that's the case, if the $25,000 offer was pending, the debtor listed the workers' case on the schedule so that the creditor has had notice and the creditor subsequently, I mean, the debtor subsequently accepted that offer, how are they, I'm assuming these are the unsecured creditors, how are they prejudiced? Well, I would like to correct a little bit of what opposing counsel indicated. At the time that the case was filed, the workers' compensation attorney had made the settlement offer of $25,000. The trustee took the position that, Hey, $25,000 is approximately $15,000 more than she's exempted. We'll take $15,000 and use that to pay the Schedule F creditors. And so we consented to that settlement. So it isn't the situation where the trustee, we didn't engage in negotiations at that point. Don't you think that a finding of prejudice should have included a finding that the workers' compensation attorney could have gotten more? I mean, on what basis have you been prejudiced if she was entitled to this money to begin with? Well, the case has been pending, well, before this appeal, we had monitored the proceedings for approximately 13 months. You know, we contacted, we kept the case open, we contacted the debtors' workers' compensation attorney. Do you have reason to believe that you could have gotten more than $25,000? We believe that $25,000 was a good settlement in the case because Then how were you prejudiced? Well, because we relied on her schedules at the time. How were you prejudiced? Schedules didn't include an amount. So aren't you really just saying that you didn't get what you thought you might have gotten and you're claiming that as prejudice, and that can't be the prejudice. The prejudice is whether or not the estate has been, in this case, the case law that we were talking about pre-Segal was the prejudice to the creditors or prejudice to the estate. And in this particular case, we've taken the position that having the amendment this late, the bankruptcy court found no good reason why she didn't claim it at the beginning. I know, there was a mistake. Right, and the district court agreed. Okay, let me, there's no question that she is entitled to this exemption. This is not a case where you might have litigated her entitlement to that. It's clear, it's incontestable. She was entitled to this exemption. Absolutely, Your Honor. At the time she filed the case, she invoked a statutory exemption that had a maximum. Okay. You, as the trustee, therefore assumed that you would get the excess. Correct. Okay. Now, are you saying that prejudice is defined as simply getting less or must there be some harm that came from the fact that she did not file this initially? Do you understand the question I'm asking you? I follow where you're going. Okay, so answer the question first. Are you saying that prejudice simply means that the estate gets less? No. Okay, so we have to find some prejudice that you were somehow harmed by the late filing of this amendment, that she didn't put it in initially. How were you harmed? The trustee kept the case open for one year and four months, monitoring the case, contacting the, you know, staying on top of it with the workers' compensation attorney, also the cost of And what was the consequence of that? What happened? Well, a consequence of that is that we were successful in getting the case settled for the $25,000. No. When they accepted the $25,000 I'm sorry, I don't know what you mean by you were successful in getting it settled. The workers' comp attorney handled that. He made the offer, yeah. Okay. And he's part of, he would be part of the estate. The administration of the No, I understand that. I'm asking you what was the prejudice? How would it have been different for you and the creditors had the initial filing claimed the full amount? We would have, with the knowledge that a $25,000 offer was pending and was recommended by the council. Had they claimed all the exemptions, we would have filed a no-asset report and closed the case two years later. Okay, now I'm asking you, now how did that harm you? What were the financial repercussions of doing that? The estate incurred the costs of the administration of this case, attorneys' council fighting this. Okay, now aren't you compensated for that? Did you lose that money or did it come off the top? We have received nothing because right now he's amended and he's Okay, so what happens? Let's say the judge said, well, that's the prejudice and we're going to do something about it. What would the result be? Compensation of the administrative expenses. And how much is that? I don't have the number in front of me at this point. But did the judge do that? Not at the bankruptcy court, no. Okay, so how do we know what those expenses are? How do we know that it makes up the difference? That's not on this record. Well, it sounds like to me that the prejudice is that the trustee gets less fee and the lawyer for the trustee gets less fee. Is that the prejudice? Well, in this particular case, the creditors are receiving nothing. They were going to get nothing anyway. You just said that. Well, if the amendment is disallowed, then they're going to receive their distribution. But that's not prejudice. You admitted that that is not prejudice. Well, in this case, it has to hinge on the administrative expenses. Okay, so forget about them. So it's the administrative expenses, and that's what Judge Merrick just asked you. So you're saying that the lawyers and the trustee aren't going to get their money back? So she doesn't – is that what happens? It's not going to get as much pay. We're going to receive nothing. Is that the way it works, that if the exemption? If there are no assets for the trustee to administer, the only compensation the trustee receives is statutory trustee fee, which I believe is $60. So it's all about the trustee's fee and your fee. Well, it's about administrative expense. I want to be clear, just because opposing counsel indicated that we've got this great financial gain. The trustee's compensation is based on what is paid to general unsecured creditors, and my compensation as counsel for the trustee is based on what gets paid to the general unsecured creditors. So we don't receive compensation if we don't make money for Schedule F general unsecured creditors. That's always a risk. Well, we wish it were that secure, but it's not. Okay, so it probably would have cost you less if you had just cut your losses and let her amend, right? Well, other than the fact that we routinely object on these late, you know, this isn't the first time this issue has come up. And, you know, we go to court and we win on that, and then we administer the assets. So at the time that we filed that initial objection, that was before Law v. Siegel came out. You know, we won those all the time. And why is it more equitable that this person not get the exemption that she's entitled to, having suffered some sort of a work injury? Why is it more equitable that she have to pay you as opposed to just say, you know what, there was a mistake? Well, in this case, you know, she received the D-5 exemption amount, so she didn't receive nothing out of the claim. She received like $10,000, I believe it was $10,550. Which is what anybody would get, even somebody who hadn't been injured at work. Well, it's a little more complicated than that because the D-5 is a wild card exemption, and so if she had had a lot of money in the bank, maybe she wouldn't have received as much. The bankruptcy code under D-5 basically says, at the time this case was filed, I believe the number was $11,975. So she would be permitted to keep that much in total assets based on the other things that she had. She was eligible to apply like $10,550 to this particular claim, but it would be different for a debtor with a large checking account or some other asset that needed to use that exemption. All right. Your time's up. Thank you. Mr. Steinberg, what about all the unnecessary litigation expense that all could have been avoided if she had just taken the full exemption? If we had been aware of it, we would have definitely amended. We had no interest in letting this mistake continue. What about if you had been aware of it? We weren't aware of it. We weren't aware of it until he contacted us on March 19th. Wait. Who wasn't aware? I was not aware of it. Aware of what? Aware that the exemption that we took was not sufficient to cover the amount of the entire claim. That was incorrect. It wasn't all the exemptions that we should have taken at that time that we had filed the case. Okay, but that's my point. Did you know that there was a workers' comp claim? Yes. And apparently there had been an offer to accept $25,000. We did not know that. Okay. Did you speak to the lawyer to find out the value of the asset at all? No, we asked our client, and she said it was pending, and she had no idea of what the amount was. Okay. Would anything have prevented you from just claiming an exemption for that settlement? No. That was the error in the case. We should have claimed D-10 and D-11 from the outset, and we weren't aware that we hadn't claimed D-10 and D-11 until we got the call from the trustee saying, you made a mistake. So you're saying this was more of a clerical mistake? You intended to claim it and you didn't? Correct. Anything else you want to tell us, Counsel? Other than that, I believe that this Siegel case has now made this type of issue, basically that the bankruptcy courts cannot deny an exemption. Well, what happens then? I mean, if this is an absolute rule that you can't deny sort of a late amendment that adds an exemption, what happens to a case that's been basically totally administered except for that last order? Well, I think it depends on the facts of those cases, and the Supreme Court said that there are remedies under the law for those types of situations, for denial of discharge, for bad faith conduct, for the inherent powers of the court to do certain things, but denying an exemption is not one of them. It's not specifically stated in the code. And basically that's the powers the courts have for potentially costs for unnecessary litigation, but nothing else. So the Siegel case sort of reaffirms the principle that everything should be or there should not be any sort of I mean, failure to abide by the... Unless it's specifically stated in the code, there's no reason to deny an exemption. Okay. Thank you both. Thank you.